UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FRANCIS K.,

                            Plaintiff,

            v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                           Defendant.
_____

**DECISION
and
ORDER**

**21-CV-202F**
(**consent**)

APPEARANCES:          LAW OFFICES OF KENNETH HILLER, PLLC
                         Attorneys for Plaintiff
                         KENNETH R. HILLER, and
                         JEANNE ELIZABETH MURRAY, of Counsel
                         6000 North Bailey Avenue
                         Suite 1A
                         Amherst, New York  14226

                         TRINI E. ROSS
                         UNITED STATES ATTORNEY
                         Attorney for Defendant
                         Federal Centre
                         138 Delaware Avenue
                         Buffalo, New York  14202
                                and
                         SCOTT ELLIOTT
                         Special Assistant United States Attorney, of Counsel
                         Social Security Administration
                         Office of General Counsel
                         6401 Security Boulevard
                         Baltimore, Maryland  21235

## JURISDICTION

On March 6, 2023, the parties to this action consented pursuant to 28 U.S.C.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 13).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 3, 2022 (Dkt. 9), and by Defendant on June 1, 2022 (Dkt. 11).

## BACKGROUND

Plaintiff Francis K. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on April 23, 2018, for Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits").  Plaintiff alleges he became disabled on July 26, 2013, based on herniated discs in the neck, clavicle replacement in the right arm, neuropathy in the neck and legs, post-traumatic stress disorder ("PTSD"), and depression.  AR[2] at 152, 175, 179.  Plaintiff's application initially was denied on July 13, 2018.  AR at 70-75.

On August 14, 2018, Plaintiff timely filed a request for an administrative hearing, AR at 76-78, and on February 26, 2020, the hearing was held in Buffalo, New York before Administrative Law Judge ("ALJ") P.H. Jung ("the ALJ") ("administrative hearing").  AR at 30-53.  Appearing at the hearing were Plaintiff, represented by legal counsel Kathryn Eastman, Esq.  Also appearing and testifying at the administrative hearing was an impartial vocational expert Donald E. Boman ("the VE").

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed in two volumes by Defendant on August 3, 2021 (Dkts. 7 and 8).  Pages 1 to 1050 are in volume 1 (Dkt. 7), and pages 1050 to 1344 are in volume 2 (Dkt. 8).

2

On March 27, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 12-29 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council ("administrative appeal").  AR at 149-51.  On December 4, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision that Plaintiff was not disabled, AR at 1-6 ("Appeals Council's Decision"), thus rendering the ALJ's Decision the Commissioner's final decision.  In connection with the administrative appeal, Plaintiff provided to the Appeals Council medical evidence which the Appeals Counsel did not consider as it was duplicative of evidence already in the Administrative Record.  On February 2, 2021, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On January 3, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 9 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of the Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On June 1, 2022, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 11-1) ("Defendant's Memorandum").  Filed on July 13, 2022, was Plaintiff's Response to Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 12) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED.  The matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**FACTS**[3]

Plaintiff Francis K. ("Plaintiff"), born October 28, 1975, was 41 years old as of his alleged DOD of July 26, 2013, and 44 years old as of March 27, 2020, the date of the ALJ's Decision.  AR at 25, 35, 174.  Plaintiff is married, has an adult son who does not live with him, and lives with his wife in a house.  AR at 46, 187.  Plaintiff graduated high school where he was an average student in regular classes, but has not completed any specialized training, trade, or vocational school.  AR at 35, 42, 180.  Plaintiff has a driver's license, drives but with pain, and can go out on his own.  AR at 190.  Plaintiff's past relevant work ("PRW") was as a general laborer, landscaper, a power washer, a food delivery person, and a mechanical/millpress operator.  AR at 180, 205-12.  Plaintiff left his last job as a landscaper because of his condition.  AR at 179.

It is undisputed Plaintiff suffers from multiple physical impairments including a neck impairment, surgical replacement of his right clavicle, pain in his neck and upper extremities, and that Plaintiff also claims a history of depression and PTSD based on unspecified abuse as a child.  AR at 179, 191, 194, 212.  In 2013, Plaintiff fractured his right clavicle which was surgically replaced subsequent to which Plaintiff had residual numbness and tingling in his right hand with decreased range of motion in his right arm.  AR at 274-91, 343-45.  From July 20, 2016 to June 2, 2017, Plaintiff obtained primary care at EMG Spine and Sports Medicine where he was treated by Tahir M. Qazi, M.D. ("Dr. Qazi").  AR at 292-339.  On June 7, 2017, Plaintiff began obtaining primary medical care through Summit Family Health Center where his primary care provider

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

("PCP") was Jeffrey Burnett, DO ("Dr. Burnett"), and Plaintiff was also treated by Ryan J. Mikac, D.O. ("Dr. Mikac"), Komal Chandan, M.D. ("Dr. Chandan"), and Physician Assistant ("PA") Kristen Bergemann ("PA Bergemann").  AR at 356-71, 398-486, 508-82.  In connection with Plaintiff's complaints of neck pain radiating into his right shoulder, Dr. Burnett referred Plaintiff to neurosurgeon John Fahrbach, M.D. ("Dr. Fahrbach"), who diagnosed Plaintiff with cervicalgia, radiculopathy, cervical region and referred Plaintiff for physical therapy from which Plaintiff, after undergoing an initial evaluation, failed to show for follow up visits and was discharged.  AR at 340-55

In connection with his disability benefits application, on July 9, 2018, Plaintiff underwent a psychiatric evaluation by psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), who diagnosed "adjustment disorder with mixed depressed and anxious mood" which would not "significantly interfere with [Plaintiff'] ability to function on a daily basis."  AR at 382-86.  That same day, Plaintiff also underwent an internal medicine examination by Samuel Balderman, M.D. ("Dr. Balderman"), who diagnosed status post fracture of right clavicle, cervical spine pain, and hypertension causing mild limitation in reaching, pushing, and pulling and mild limitation in frequent changes in position.  AR at 388-91.  On July 12, 2018, state agency review psychologist J. Dambrocia, Ph.D. ("Dr. Dambrocia"), and J. Lawrence, M.D. ("Dr. Lawrence"), reviewed Plaintiff's medical records.  AR at 59-66.  Dr. Dambrocia diagnosed Plaintiff with an adjustment disorder with mixed depressed and anxious mood, but opined Plaintiff did not have a psychiatric impairment that would significantly interfere with Plaintiff's ability to function on a daily basis.  AR at 59-60.  Dr. Lawrence did not render any diagnosis but determined Plaintiff was mildly limited as to pushing, pulling and reaching in any direction with the right

5

upper extremities, and also assessed lifting and carrying restrictions, and limited standing, walking, and sitting to six hours of an eight-hour workday. AR at 63-64.

On January 29, 2020, Plaintiff underwent a physical residual functional capacity assessment performed by registered occupational therapist ("OT") Diane Ralph ("OT Ralph"), AR at 584-94, who reported that during the examination, Plaintiff put forth full effort and "reported reliable pain ratings 85.7% of the time which would suggest that pain could have been considered a limiting factor during functional testing." AR at 584. Active range of motion ("AROM") testing of Plaintiff's musculoskeletal system showed AROM within normal limits ("WNL") for all fingers and thumbs, but AROM largely within functional limits ("WFL"), *i.e.*, outside the normal range but sufficient for activities of daily living for Plaintiff's lower and upper extremities, with some AROM outside normal limits particularly with regard to shoulder extension, and adduction, horizontal adduction, and internal and external rotation, bilaterally. AR at 587-88. Based on the assessment, OT Ralph determined Plaintiff, with his upper extremities, could perform occasional grasping, pinching, fine motor and gross motor activities, AR at 591, occasionally walk, *id*., but should avoid forward reaching, above shoulder reaching, bending, squatting, kneeling, repetitive kneeling, off the ground static balancing, and off the ground dynamic balancing. *Id*. at 592-93. OT Ralph concluded Plaintiff retains the residual functional capacity ("RFC") for sedentary work but is presently unable to work full time because of pain in his neck, back, and right shoulder that increases with minimal repetitive motions, *id*. at 594, and that at present, "it would be unsafe for [Plaintiff] to be in a working environment where he could possibly further injure himself." *Id*. at 584. In a letter dated March 19, 2020, Dr. Mikac indicated Plaintiff is his patient and has a history of

degenerative disc disease. AR at 1334. Dr. Mikac further stated he agreed with OT Ralph's recommendations regarding Plaintiff's functional limitations and ability to work. *Id*.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[5]  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[5] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title II, 42 U.S.C. § 423(d), and Title XVI, 42 U.S.C. § 1382c(a)(3), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's RFC which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because

if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

3.     **Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity ("SGA") since April 23, 2018, the date Plaintiff filed his application for disability benefits.  AR at 17.  The ALJ found Plaintiff suffers from the severe impairments of hypertension, degenerative disc disease of the cervical spine, right carpal tunnel syndrome status/post release, and right shoulder disorder, *id*., but that Plaintiff's asthma, although medically established, does not pose more than a *de minimis* effect on Plaintiff's ability to perform physical or work activities and, as such, is not a severe impairment, *id*., and that Plaintiff's complaints of anxiety, despite some evidence of an adjustment disorder, does not pose more than a minimal limitation to Plaintiff's ability to perform basic mental work activities such that any mental impairment is non-severe, *id*. at 17-18, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 18-19.  Despite his impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 404.1576(b), with additional restrictions including that Plaintiff can never climb ladders, ropes, and scaffolds, can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, can never crawl, can frequently, as opposed to constantly, reach overhead with the bilateral extremities, and frequently handle with the right upper extremity, but must avoid

more than frequent exposure to extreme cold and extreme heat, and never have exposure to vibration, hazards, machinery, or heights.  *Id*. at 19-23.  The ALJ further found Plaintiff is incapable of performing his PRW, all of which required either medium or heavy physical exertion, *id*. at 23, but that based on Plaintiff's age on the application date of 42, which is defined as a younger individual, and given Plaintiff's RFC, education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a photocopy machine operator, blood donor unit assistant, and tanning salon attendant.  *Id*. at 23-24.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since April 23, 2018, the application date.  *Id*. at 24-25.

     In support of his motion, Plaintiff argues that at step two of the five-step sequential analysis, the ALJ erroneously found Plaintiff's mental impairments are non-severe and then failed to account for them in formulating the RFC, Plaintiff's Memorandum at 12-18, and that the ALJ rejected all medical opinions of record such that the RFC is based on the ALJ's own lay opinion rather than substantial evidence.  *Id*. at 18-28.  Defendant argues the ALJ's opinion is supported by substantial evidence in the record, Defendant's Memorandum at 7-11, including the ALJ's reasonable assessment of the persuasiveness of each medical opinion and prior administrative finding regarding Plaintiff's physical functioning, *id*. at 11-15, the ALJ reasonably formulated an RFC that is based on the record as a whole, *id*. at 15-20, and because the ALJ considered Plaintiff's mental condition in assessing the RFC, yet found no evidence in the record required further restriction based on any mental impairment.  *Id*.

at 20-26.  In reply, Plaintiff reiterates that although at step two, the ALJ found Plaintiff's mental impairments were non-severe, the ALJ failed to account for the non-severe impairments in the RFC, Plaintiff's Reply at 1-2, and the ALJ's rejection of all physical medical opinion evidence establishes the ALJ formulated the RFC based on lay opinion rather than substantial evidence.  *Id*. at 2-6.  Plaintiff's argument regarding the ALJ's failure to consider Plaintiff's non-severe mental impairment in formulating Plaintiff's RFC is without merit, but Plaintiff's argument regarding the ALJ's determination as to Plaintiff's physical functioning requires remand for further proceedings.

### A.    Mental Impairment

With regard to Plaintiff's non-severe mental impairment, Plaintiff correctly maintains, Plaintiff's Memorandum at 14-15, that despite being a non-severe impairment, the ALJ was required to consider the effects of all impairments, including both severe and non-severe, in formulating Plaintiff's RFC.  See *McAninch v. Astrue*, 2011 WL 4744411, at *24 (W.D.N.Y. Oct. 6, 2011) (citing *Walterich v. Astrue,* 578 F.Supp.2d 482, 503, 512 (W.D.N.Y.2008) (adopting report and recommendation that in determining whether a claimant is disabled, the ALJ is required to address multiple impairments in combination and to consider their cumulative effect as well as the combined effects of nonsevere impairments (citing *Dixon v. Shalala,* 54 F.3d 1019, 1031 (2d Cir.1995) (the SSA must evaluate the "combined impact [of a claimant's impairments] on a claimant's ability to work, regardless of whether every impairment is severe"))).  See also *Koseck v. Secretary of Health and Human Services*, 865 F.Supp. 100, 1010 (W.D.N.Y. 1994) (same).  In the instant case, the ALJ considered the opinions of Dr. Santarpia and Dr. Dambrocia, both of whom found Plaintiff with only a

mild mental health impairment which was not expected to significantly interfere with Plaintiff's ability to function on a daily basis. AR at 17-18 (citing AR at 60, 385). Both Dr. Santarpia and Dr. Dambrocia also noted Plaintiff has not sought nor received any treatment for any mental impairment. *Id*. The record thus establishes the ALJ did consider Plaintiff's non-severe mental health impairment, but given nothing in the record indicates there are limitations to Plaintiff's ability to perform work related activities based on any mental impairment, the ALJ's failure to incorporate any such limitations into the RFC determination was not erroneous, and Plaintiff's argument to the contrary is without merit.

    **B.    Physical Impairment**

The ALJ's formulation of Plaintiff's RFC, including that Plaintiff can perform a limited range of light work, is not supported by substantial evidence in the record. As defined by the relevant regulation,

> light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

Here, the ALJ found Plaintiff could frequently, as opposed to constantly, "reach overhead with the bilateral upper extremities," and "frequently handle with the right upper extremity." AR at 19. In particular, the ALJ found Plaintiff's medically determinable impairments, particularly his history of neck pain with radicular symptoms,

13

and decreased AROM in his upper extremities, can be reasonably expected to cause the symptoms as Plaintiff alleges, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of such symptoms are not entirely consistent with the medical evidence in the record.  AR at 19-23.  In making this finding, the ALJ found all the medical opinions of record unpersuasive, including that of Dr. Lawrence, AR at 22, OT Ralph, *id*., Dr. Balderman, *id*. at 23, and Dr. Mikac.  *Id*.  Significantly, the ALJ rejected Dr. Mikac's opinion, essentially adopting OT Ralph's opinion, because "it does not provide a function-by-function limitation with respect to exertional and non-exertional limitations," AR at 23, yet attached to Dr. Mikac's opinion is a copy of OT Ralph's physical residual functional capacity assessment in which a function-by-function limitation is provided as to 24 separate categories of physical abilities.  *See* AR at 584-94, 1335-43.   Dr. Balderman also reported some decreased ranges of motion of Plaintiff's cervical spine and upper extremities, AR at 390, calling into question the ALJ's determination that Dr. Balderman's opinion did not contain a function-by-function assessment.  Dr. Lawrence's review of Dr. Balderman's opinion is consistent with such opinion.  AR at 63-65.  The ALJ, however, found none of these opinions persuasive; rather, the ALJ references medical evidence that does not support this finding.

Specifically, the ALJ states Plaintiff can mow the lawn, AR at 21, yet the medical evidence the ALJ references in support of this statement is a treatment note composed by PA Bergemann stating that she examined Plaintiff on May 14, 2019 for complaints of "neck pain worse over past several days; does have chronic neck pain issues," AR at 479, and that Plaintiff reported present symptom onset was three days earlier after mowing the lawn.  *Id*.  PA Bergemann assessed Plaintiff with "acute exacerbation of

14

chronic right-sided neck pain with intermittent paresthesia[ ] (tingling and numbness)" for which Plaintiff was prescribed Lortab (narcotic analgesic) and Lidoderm (muscle pain) and instructed to follow up with his primary care physician, pain management, and neurosurgery. *Id*. at 480-81. In short, this portion of the administrative record does not support the ALJ's determination that Plaintiff can mow the lawn and, as such, does not constitute substantial evidence supporting the ALJ's finding that Plaintiff does not suffer any limiting effects from severe pain in his upper extremities, particularly his right shoulder area.

Similarly, the ALJ points to the record as establishing that in "late 2019" Plaintiff was able to "clean out a room," and "to roll a carpet up." AR at 21 (citing AR at 557). The particular medical record referenced in support of this finding, however, is a treatment note from Plaintiff's primary care providers Dr. Mikac and Dr. Burnett, listing the reason for the appointment as complaints of "constant cough" and shortness of breath for the past four days and that Plaintiff "had been cleaning dog feces contaminated room prior to [symptoms] starting." *Id*. The treatment note continues explaining that Plaintiff, with his history of, *inter alia*, asthma, "was cleaning a room that had dried dog feces, rolled a carpet up, a lot of dust and possible fecal particles were disseminated into the air, causing him to cough and be short of breath . . . ." AR at 557. Significantly, the medical appointment focused only on Plaintiff's complaints of coughing and shortness of breath and did not include any examination of Plaintiff's musculoskeletal system other than a notation that Plaintiff has a history of chronic neck and back pain. *Id*. at 557-58. Nor does the record indicate the size of the dog feces-encrusted carpet Plaintiff rolled up, and the medical assessment was only "asthma

15

exacerbation, mild." *Id*. at 557.  Accordingly, this record item also fails to establish Plaintiff can "frequently reach overhead with the bilateral upper extremities," and "frequently handle with the right upper extremity."  AR at 19.  Moreover, insofar as the ALJ found Plaintiff, as his ill wife's primary caregiver, can dress, bathe, groom, cook, clean, do laundry, shop, management money, watch TV, and listen to radio," AR at 21, the record establishes Plaintiff repeatedly asserted that although he can perform such activities, he does so at a rate that is slower than normal, *id*. at 39-41, 43-44, 46-47, 188-97, which is consistent with OT Ralph's finding, adopted by Dr. Mikac, that pain was a limiting factor to Plaintiff's functional testing.  AR at 584.  Thus, this part of the record, as relied on by the ALJ, does not constitute substantial evidence that Plaintiff's pain in using his upper extremities, especially his right shoulder, is limited.

In short, the ALJ's determination that Plaintiff can frequently reach overhead bilaterally and frequently handle with the right upper extremity," AR at 19, is not supported by substantial evidence in the record, requiring remand for further consideration of the record on this point.  Although the ALJ's decision is devoid of consideration of the effects of pain on Plaintiff's ability to use his upper extremities, the court's searching review of the record does not assure that Plaintiff is disabled and, accordingly, the case should be remanded for further consideration of the record.  *See Claudio-Montanez v. Kijakazi*, 2022 WL 17819123, at *3 (2d Cir. 2022) (remanding for further consideration of the record and citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) for the proposition that a reversal with remand for calculation of benefits is appropriate when the record is so clear as to compel the conclusion that the claimant is disabled, but not when the outcome is still uncertain).  *See also Webster v. Colvin*, 215

F.Supp.3d 237, 244 (W.D.N.Y. 2016) (remanding for reevaluation of all evidence relevant to determining the plaintiff's disability claim including the effects of the plaintiff's pain).

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is GRANTED; Defendant's Motion (Dkt. 11) is DENIED; the matter is REMANDED to the Commissioner for further proceedings consistent with this Decision and Order.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: March 16, 2023
Buffalo, New York